IN RE BAUMGARTNER.

[Cite as In re Baumgartner (1976), 50 Ohio App. 2d 37.]

(No. 76AP-135—Decided June 24, 1976.)

*Ms. Carolyn A. Watts*, The Legal Aid & Defender Society, and *Mr. C. William Lutz*, for Pattie Sue Baumgartner Tackett.

*Mr. David E. Friedlander*, for appellee Franklin County Children Services Board.

REILLY, J. Appellant has filed the following notice of appeal:

"Notice is hereby given that Pattie Sue Baumgartner Tackett, the mother of Carrie Lynn Baumgartner, hereby appeals to the Court of Appeals of Franklin County, Ohio, Tenth Appellate District, the order of this Court, filed January 23, 1976, committing Charlie Lynn [*sic*] to the permanent custody of the Franklin County Children's Services Board. This appeal is taken pursuant to App. R. 4(A) and is filed as a matter of right."

The record shows a complaint was filed by the Franklin County Children Services Board alleging Carrie Lynn Baumgartner was a neglected minor child, and seeking permanent commitment to the Franklin County Children Services Board for adoption. The case was heard before a judge of the Juvenile Division of the Franklin County Common Pleas Court. At the hearing, the complaint was amended from neglect to dependency.

The transcript shows essentially informal testimony which was not, however, incomplete, indicating that appellant, the mother of Carrie Lynn, was contacted by Mr. and Mrs. Curt Griffith regarding Carrie Lynn's future. It is apparent that Mr. and Mrs. Griffith showed concern about the child and, at the time, wished to adopt her. Appellant was also quite desirous for this result.

Hence, it was suggested to the court by counsel for appellant that the temporary commitment to the Franklin County Children Services Board be terminated, and that Carrie Lynn continue as a ward of the court, and that she be directly placed with the Griffiths. In the alternative, it was suggested that the temporary commitment be continued, and that Franklin County Children Services be directed to place Carrie Lynn with the Griffiths. The child, at the time of the hearing, was four years old and, the transcript shows, had been in a foster home since August of 1973.

The trial court specifically noted this fact in its concluding remarks:

"The Court: You know, you may have a situation where the foster parents get uptight about this too. You know a lot of times these foster parents want to adopt when the children become available. Many of our adoptions today are by foster parents. They might feel that they had done a yeoman's job with this child for the last year and seven months, so these are all the things that have to be considered by the Children's Services Board. Very frankly, one of the things that goes into adoption is the motivation of the adopting parents. What's their motivation? Is their motivation, you know, out of * * * because they don't have children and they want children? Because they want, you know, to have children and have a family and raise children? Is their motivation to save a marriage that's going on the rocks? Is their motivation to satisfy some psychiatric need that they have within themselves? All of those things are * * * people adopt children with all those motivations in mind. I'm not capable, this Court isn't capable, of making those kind of determinations so I have to defer to the people who are professionals in

this field. The court will make a permanent commitment of this child, finds that the child is a dependent child, make a permanent commitment and place the child in the permanent custody of the Franklin County Children's Services Board. That's all."

In any event, appellant has perfected this appeal, assigning the following as error:

"The trial court erred in refusing to consider the alternate plans of the mother of the child and in refusing to hear any testimony regarding the suitability of the proposed placement and in permanently committing appellant's child to Franklin County Children's Services Board."

We note at the outset there was no issue raised concerning the trial court's finding that Carrie Lynn Baumgartner was a dependent child. It is reiterated that we have repeatedly emphasized the rights of parents concerning children. This case, however, is distinguishable from several of the other cases decided by this court and cited by counsel for appellant. The trial court is not required to permit a mother of an admittedly dependent child to pick and choose the child's adoptive parents. Moreover, the entire context of the trial court's comments in the transcript shows awareness and consideration of the suggested alternative plans. In fact, the trial court specifically stated the proposed adoptive parents could make application to the Children Services Board for adoption or commitment of the child to their care. The key point is that the professional agency is best able to consider who, among the prospective adoptive or foster parents, would be most capable of meeting the needs of the child. In essence, the court did not concede that the mother could formulate a plan for giving her child away after the child was adjudged dependent.

The trial court quite plainly acted within its statutory authority. We note R. C. 2151.353, in pertinent part, as follows:

"If the child is adjudged an abused, neglected, or dependent child, the court may make any of the following orders of disposition: * * *

"(D) Commit the child permanently to the county department of welfare which has assumed the administration of child welfare, county children services board, or to any other certified agency. Upon such commitment the natural or adoptive parents are divested of all legal rights and obligations due from them to the child or from the child to them."

The trial court emphasized that it was not an adoption court by illustrating future problems and conflicts emerging from assuming such a role with poignant results. Simply stated, it was the crux of the trial court's judgment that the professional agency was best able to consider and determine the child's best interests. The net effect is that there are no options foreclosed, including ultimate adoption by the Griffiths. The trial court, aware of the alternatives, simply placed jurisdiction in the proper professional area.

Moreover, it was made quite plain that adoption was a separate proceeding within the jurisdiction of the Probate Court and should not be hampered in any manner by another court. These functions are, of course, related to separate and distinct jurisdictions. Therefore, we find the trial court acted within its statutory authority, considered the child's best interests, did not foreclose any option whatever, and placed the ultimate determination in the proper professional agency. Consequently, appellant's assignment of error is overruled.

Whereupon, for the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH, P. J., and HOLMES, J., concur.